KINSLEY, GUARDIAN, *v.* KINSLEY.

[No. 18,447. Filed March 17, 1898.]

PLEADING.—*Demurrer.*—A demurrer to a complaint for want of facts raises the question of the right of the plaintiff to maintain the action. *p. 69.*

GUARDIAN.—*May Maintain Suit to Enjoin Injury to Ward's Estate.*— A guardian, in possession of ward's real estate, may maintain a suit in his own name to enjoin injury to his ward's real estate. *pp. 69-74.*

From the Shelby Circuit Court. *Reversed.*

*T. B. Adams* and *Isaac Carter*, for appellant.

*K. M. Hord, E. K. Adams* and *Shaw & Horst*, for appellee.

HOWARD, C. J.—The appellant filed her complaint against the appellee in two paragraphs, to each of which the court sustained a demurrer. In the first paragraph of the complaint it is alleged: That the appellant is the duly appointed guardian of one Goldie Kinsley; that since her said appointment, at the June term, 1896, of the Shelby Circuit Court, she has been, as such guardian, in possession of certain described real estate in Shelby county; that the appellee, "without right, unlawfully, and without legal authority," and, though forbidden by this guardian so to do, has entered upon said real estate, and is engaged in raising and removing a dwelling house from the same; that said house is permanently attached to and a part of said real estate, and cannot be removed therefrom without great damage thereto and to her ward's use and enjoyment and the rents and profits thereof; and that the damages to said premises will be irreparable. The prayer is for a temporary restraining order, and on the final hearing for a permanent injunction and damages. The second paragraph is similar, except that it alleges: That the appellee has entered upon the premises and raised the building from its foundations and placed the same upon rollers for the purpose of removing it from the premises; that great damage has already been caused by the pulling away of the foundations, and the wrenching and twisting of the frame work, windows, and doors, and the cracking of the plastering. The prayer in this paragraph is for damages.

The reason for the action of the court in sustaining

the demurrer to the complaint does not appear from the record; but we learn from the briefs of counsel that the ruling of the court was based upon the holding that the guardian was not the proper party to institute the action. It has been decided that a demurrer to a complaint for want of facts does raise the question of the right of the plaintiff to maintain the action. *Wilson* v. *Galey*, 103 Ind. 257; *Farris* v. *Jones*, 112 Ind. 498.

There is a second ground of demurrer stated, that there is a misjoinder of causes of action. This error, however, even if it existed, would not, by force of the statute, authorize a reversal of the judgment. Section 344, Burns' R. S. 1894 (341, R. S. 1881); *Cargar* v. *Fee*, 140 Ind. 572.

It is said in appellant's brief that the learned judge who presided in the court below, in passing upon the demurrer, said that, at first, he thought that .the guardian could maintain a suit in her own name to prevent waste to her ward's real estate, but was of opinion that in the case of *Wilson* v. *Galey*, *supra*, it was decided otherwise; and that, while he regarded that case as bad law, he felt nevertheless that he was bound by it, and would have to sustain the demurrer, on the ground that the guardian could not bring such a suit in her own name, but that it must be brought in the name of the ward by a next friend. Whether *Wilson* v. *Galey*, *supra*, is good law we need perhaps not say, but, even if it is, we do not think it is authority in the case at bar. It was there alleged in the guardian's complaint for waste, "that his wards were the owners of certain real estate, particularly described, wherein the appellant Sophia B. Wilson had a life estate for and during her own life, and then had possession thereof as such life tenant." In the case at bar it is shown in the complaint that the guardian

is herself, as such guardian, and has been ever since her appointment, in possession of the real estate in controversy.  In the former case, the party committing the waste was herself in possession of the real estate, but here the guardian is in possession, and is seeking the aid of the court to protect that possession. It has frequently been decided that the disturbance of the rightful posssession of real estate may be prohibited by injunction.  *Central Union Tel. Co.* v. *State, ex rel.*, 110 Ind. 203; *Kern* v. *Isgrigg*, 132 Ind. 4.

It is true that, in section 256, Burns' R. S. 1894 (255, R. S. 1881), it is provided that "when an infant shall have a right of action, such infant shall be entitled to bring suit thereon;" and that, in section 257, Burns' R. S. 1894 (256, R. S. 1881), it is further provided that, "before any process shall be issued in the name of an infant who is a sole plaintiff, a competent and responsible person shall consent in writing to appear as the next friend of such infant."  These are no doubt wise statutes for the protection of the rights of infants, but we do not think they were intended to prohibit other forms of action in favor of infants and their estates.  It has been expressly held that, under section 261, Burns' R. S. 1894 (260, R. S. 1881), an infant may sue as a poor person without a next friend. *Britton* v. *State, ex rel.*, 115 Ind. 55.  And, under section 1208, Burns' R. S. 1894 (1194, R. S. 1881), providing that in all proceedings for partition of land "guardians may act for their wards as their wards might have acted, being of age," it has been held that guardians of minors may bring or defend actions in their own names for partition of the lands of their wards.  *Bowen* v. *Swander*, 121 Ind. 164.  Also, under clause 5 of section 2685, Burns' R. S. 1894 (2521, R. S. 1881), providing, among other things, that it shall be the duty of a guardian of a minor to "collect all

Kinsley, Guardian *v.* Kinsley.

debts due such ward," it has been held that a guardian may bring suit in his own name to collect such debts. *Shepherd* v. *Evans,* 9 Ind. 260.   It has also been held that the guardian of a minor may sue and recover for injury to his ward, precisely as the minor might have sued and recovered by next friend in case he were not under guardianship.   *Louisville, etc., R. W. Co.* v. *Goodykoontz,* 119 Ind. 111; *Cleveland, etc., R. W. Co.* v. *Moneyhun,* 146 Ind. 147.

These instances make it plain that it was not intended that the right to sue by next friend should be the only right of action in favor of an infant.   It is indeed well that an infant should have the right to sue by next friend.   There may be no guardian, or the guardian may be unfaithful to his trust.   To put a minor, so far as possible, on an equality with an adult in this respect, it was necessary to provide that, as he is incompetent in law to speak for himself, some friend might come into court with him, and there speak and act for him.   As the minor could not be bound for costs, it was further necessary to provide that the friend appearing for him should be liable for the costs of the suit brought.   None of these reasons appear in case the guardian comes into court for his ward.   We are therefore of opinion that the statutes providing that an infant may bring suit by next friend were intended as an additional protection to infants and their estates, and were not meant to deprive them of other means of obtaining such protection.

Moreover, it is clear, as we think, that the statutes in relation to guardians fully authorize the bringing of such an action as that here brought.   By section 2673, Burns' R. S. 1894 (2512, R. S. 1881), it is provided that the appointment of a guardian for a minor in any county shall "extend to all the property of the

ward within this state." By "all property" is meant, of course, not only personal property but also real estate. By section 2676, Burns' R. S. 1894 (2515, R. S. 1881), it is provided that "before any person shall be appointed guardian of any minor, he shall file in the office of the clerk of the court having such appointment to make, a statement, in writing, of the whole estate of said minor, and the probable value thereof, specifying the value of the personal property and real estate separately, and also specifying the probable value, if any, of the annual rents and profits of such real estate; and shall verify the same by affidavit; and shall give bond, with two or more resident freehold sureties, who shall be bound jointly and severally in said bond, payable to the State of Indiana in penalty double the amount of such personal property and four times the annual value of such rents and profits." Why the law should require the guardian to file a valuation of the real estate of his ward and of the annual rents and profits of such real estate, and why he should be required to give bond, not only for double the value of the personal property, but also for four times the annual value of the rents and profits,—and yet not be authorized to protect, by suit or otherwise, his possession and custody of such real estate and the rents and profits of the same, is not at all easy to understand. Shall he give bond to account to the court for the rent of his ward's house and land, in penalty four times such rent; and yet the court refuse him the right to prevent an intruder from coming upon the land and taking away the house, and also refuse him the right to recover damages for injury done the house and land? Or is the guardian driven to the alternative of going out among friends of his ward to seek the aid of some such friend who may be able to give a cost bond and so bring

suit against the despoiler of the infant's estate?    Yet it is provided in section 2682, Burns' R. S. 1894 (2518, R. S. 1881), that the guardian shall have "the management of such minor's estate during minority;" and by section 2685, Burns' R. S. 1894 (2521, R. S. 1881), it is further made his duty "to manage the estate for the best interests of his ward." How he is to manage the estate without the power to bring an action necessary for its protection is not apparent. Having the right to manage his ward's estate, and it being made his duty to manage it for the best interests of his ward, it would be quite unreasonable to say that the law did not also give to the guardian the means to enforce such right and to perform such duty.

In the control given to guardians over the property of their wards, the law does not seem to distinguish between personal and real property, except that the guardian may not sell or incumber real estate without an order of court. But, for the reason simply that the statute gives to the guardian the custody and management of the personal property of his ward, it has been held that he may maintain replevin for it, notwithstanding the infant might also, by next friend, in a proper case, bring suit to recover such property. *Boruff* v. *Stipp*, 126 Ind. 32. In the case cited, the court held that the right of action for possession is not necessarily in the infant, when he has a legally appointed guardian claiming the possession and custody of the property. The guardian, said the court, "having the right to the control and management of the property he must, as a necessary incident, have the right to recover possession of such property from one unlawfully retaining the possession of the same. It certainly does not lie in the mouth of one who unlawfully retains possession of the property of the ward, and deprives the guardian from managing and

controlling the same to say that he has no right to sue for and recover the possession when the infant is making no objection."

The right and duty of the guardian to protect his ward's real property can certainly be no less than his right and duty to protect such ward's personal property. The judgment is reversed, with instructions to overrule the demurrer to each paragraph of the complaint.