# SECURITY-FIRST NAT. BANK OF LOS ANGELES v. KING, ET AL

(No. 1774; July 5, 1933; 23 Pac. (2d) 851).

For the plaintiff in error there was a brief by *F. A. Michels* and *G. J. Christie* of Lander, Wyoming, and *L. F. Chase* of Los Angeles, California, and oral arguments by *Messrs. Christie, Michels* and *Chase.*

For defendants in error there was a brief by *Bryant S. Cromer,* of Casper, Wyoming, *A. H. Maxwell* of Lander, Wyoming, and *Donald Spiker* of Riverton, Wyoming, and oral arguments by *Messrs. Cromer, Maxwell* and *Spiker.*

BLUME, Justice.

Charles Henry King died testate at Los Angeles, California, on February 28, 1930, and the Security-First National Bank of that city, herein referred to as plaintiff, was duly appointed executor of the estate. Leslie L. King and Theodore Becker, named herein as defendants, were appointed (ancillary) executors by the district court of Fremont County in this state, and they, on August 29, 1930, filed an inventory of the property of the estate situated in this state. On October 31st, 1931, plaintiff filed its petition in the district court just mentioned "in the matter of the

estate of Charles Henry King, deceased," alleging that it is a corporation, organized under the laws of the State of California; that it is the executor of the will of the decedent and "is a beneficiary under said will;" that the defendants above named are ancillary executors; that they have filed an inventory and appraisement of the property; that the inventory shows only 1 share of the stock of the King Investment Company, as the property of the estate, but should show 499 shares; that it fails to, but should, contain 61 shares of the stock of the Riverton Lumber Company, shares of stock of the Shoshoni Lumber Company, shares of stock of the Omaha Wool & Storage Company, and certain indebtedness and other property, including indebtedness of Leslie L. King owing to the estate. Plaintiff accordingly prayed that the executors in this state be required to inventory and account for the property specified, and that they be removed as executors and for other relief. The defendant executors, on May 28, 1932, appeared and answered, in substance denying that "there is any property, stocks, credits or other assets belonging to the estate of Charles Henry King, deceased, which have not heretofore been accounted for in the inventory and appraisement heretofore made and filed herein." Trial was had upon the issues thus joined between the parties. Testimony was taken for a week, and thereupon the trial court, refusing to determine the issues, announced that in view of the fact that Leslie L. King claimed the property in his own right, and that all the parties interested in the estate were not before it, it had no jurisdiction to determine the title thereto, and accordingly dismissed the petition at plaintiff's cost. From that judgment, the plaintiff has brought proceedings in error to this court. A motion to dismiss the appeal has been filed herein, but that need not be discussed separately, since most of the grounds

thereof are substantially those covered by the objections hereinafter mentioned in connection with the proceedings in the court below.

1. The defendants urge that the plaintiff is not entitled to sue in the courts of this state in its capacity as foreign executor. The general rule undoubtedly is that in the absence of a statute, such executor cannot sue in the courts of a state other than that in which he was authorized to act. 24 C. J. 1129. Our statutes authorize him to receive voluntary payments and thereupon execute releases (Sec. 71-224, Rev. St. 1931), and to present a testament, admitted to probate in another state, in the courts of this state, in order to have it admitted to probate here. Sec. 88-301-305. But we have no statute authorizing him to sue in this state.

Counsel for plaintiff argue that the rule above stated is based upon the duty, and the policy of each state to protect creditors and others residing within its limits, and that for that reason a foreign executor or administrator should not ordinarily be able to remove property therefrom; that the reason of the rule ceases in this case, since the suit herein will in no manner effect a removal of property from this state; that, however, as domiciliary executor, it has an interest in protecting the estate, particularly in view of the rule that an ancillary executor ordinarily transmits all surplus funds to the domiciliary executor, as stated in 24 C. J. 1126. It would seem that receivers appointed by a court in one state may, at times at least, sue in the courts of another state, and this by reason of the rule of comity. Continental Oil Co. v. American Cooperative Ass'n, 31 Wyo. 433, 228 Pac. 503. However, though the principle involved would seem to be the same, we have found no case expressing a similar thought in connection with foreign executors or administrators. Counsel cite in re Davis,

45 Misc. Rep. 306, 92 N. W. S. 392. In that case a foreign executor was permitted to appear and contest an application for the probate of a will. But the holding of the court is based on the construction of a particular statute. In re Lewis, 32 La. Ann. 385, it was held that a foreign representative cannot sue to revoke an ancillary appointment in another state. That decision touches part of what is asked in the case at bar. For reasons hereinafter appearing, we need not determine whether the rule first above mentioned may not, on the grounds of comity, be relaxed in certain cases, or in the case at bar.

2. Counsel for the plaintiff further contend that the objection to plaintiff's right to sue was waived. They rely on sections 89-1006, 1008, Rev. St. 1931, which provide that the objection that the plaintiff has no legal capacity to sue may be raised by demurrer, when that appears on the face of the petition, and by answer when it does not so appear, and that unless raised either by demurrer or answer, the objection shall be deemed to be waived. In the case at bar the point involved was not raised either by demurrer or answer. Counsel for defendants, however, claim that we have here no question of legal capacity to sue, but whether or not the petition states facts sufficient to constitute a cause of action, and that this objection is not, under the provision of the statute just mentioned, waived, though not raised either by demurrer or answer. There is some authority sustaining this contention. Louisville etc. Ro. Co. v. Brantley's, Adm'r 96 Ky. 297, 28 S. W. 477, 49 A. S. R. 291; Lefebure v. Baker, 69 Mont. 193, 220 Pac. 1111. These cases proceed upon the theory recently mentioned by us in the case of Moshannon Nat. Bank v. Iron Mountain Ranch Company, on rehearing, 45 Wyo. 265, 21 Pac. (2d) 834, namely, that when a petition discloses that the cause of action therein stated lies in favor of

some one else and not in favor of plaintiff, it is subject to the objection that it fails to state facts constituting a cause of action. Some semblance of help to defendant's contention may be found in Colburn v. Latham, 32 S. D. 310, 143 N. W. 278, which states that in a case of this kind the question is not one of capacity to sue, but one of sufficient interest in the subject matter to enable the plaintiff to maintain the action. And Indiana holds that a demurrer for want of facts stated in the petition raises the question of the right of plaintiff to maintain the action. Tucker v. White, 28 Ind. App. 328; 62 N. E. 758 47 C. J. 183, note 97. See also Vickery v. Beir, 16 Mich. 50. There are other cases which hold that the objection against a suit by a foreign administrator or executor affects only, or mainly, the capacity of plaintiff to sue, and not the jurisdiction of the court or the cause of action. (Farmers' Trust Co. v. Bradshaw, 137 Misc. Rep. 203, 242 N. Y. S. 598; Dearborn v. Mathes, 128 Mass. 194); that the objection may be waived (24 C. J. 1135; Palm v. Howard, 31 Ky. L. 316, 102 S. W. 267); and that if it is not raised by demurrer or answer it is waived. Dahlstrom v. Walker, 33 Idaho 374, 194 Pac. 847, and cases cited; Wilson v. Wilson, 26 Or. 251, 38 Pac. 185; Gregory v. McCormick, 120 Mo. 657; 25 S. W. 565; Wright v. Wayland (Mo. App.) 188 S. W. 928; Robbins v. Wells, 18 Abb. Prac. 191; Id. 26 How Pr. 15. Pomeroy, Code Remedies, (5th Ed.) Sec. 109, says:

"Although in general a foreign executor or administrator cannot sue as such in the courts of another state or country than that in which he was appointed, yet if the objection is not raised by answer or demurrer, it is waived under the codes of procedure; that is, the objection goes simply to the parties' capacity to sue, and not to the cause of action set up in the complaint or petition."

We need not decide the question. Its decision in favor of the plaintiffs herein would not aid it in any respect, since the objection could be raised upon the retrial of this case. The right of plaintiff to conduct this suit is not based solely on the fact that it is executor of the King estate. It is alleged in the petition filed in the court below that it is a beneficiary under the will of C. H. King, deceased. That allegation was not denied, and stands as an admitted fact in the case. Furthermore, plaintiff introduced in evidence a duly certified decree of the Superior Court of California admitting the will of C. H. King to probate, appointing plaintiff as executor and finding the allegations of the petition filed in that court to be true. Among these allegations are, as disclosed by a copy attached, that the Security Trust and Savings Bank was appointed trustee in the last will and testament of the deceased; that plaintiff herein is, by reason of consolidation, the successor in interest of the trustee appointed under the will, and that it is authorized to act as trustee under the laws of the State of California. It is conceded that the plaintiff has the right to sue in this state if it is a beneficiary under the last will and testament of C H. King, deceased. See In Re Rawitzer's Estate, 175 Cal. 585, 166 Pac. 581. Counsel for the defendants argue, however, that plaintiff did not bring the action in that capacity, in view of the fact that it styled itself, in the caption, as well as in the main part of the petition, as executor under the last will and testament of C H. King deceased. We think, however, that if the petition is otherwise sufficient—as it is in this case—the manner in which plaintiff styled itself is immaterial and may be regarded as surplusage. That principle has been applied in situations similar to that in the case at bar. Thus it is said in 24 C. J. 1131:

"If the cause of action is one which did not accrue to decedent in his life time, but to the representative after the former's death, the representative may sue thereon in his own name, and the fact that in such action he styles himself as representative will not defeat the action but the designation may be regarded as surplusage"

3. Counsel for the defendants further contend that though what we have said is true, still plaintiff cannot be heard in this court, for the reason that this is a proceeding in error; that such proceeding is a new suit, and that the petition in error herein is fatally defective in that it contains no allegations to the effect that it is a trustee or beneficiary under the will of C. H. King deceased. This is a novel contention, not supported by the citation of any authority. It is true, as contended, that a proceeding in error is in the nature of a new suit. Barrett v. Whitmore, Adm'r, 28 Wyo. 495, 506, 207 Pac. 71; 3 C. J. 304. But that does not, we think, necessarily lead to the correctness of the contention of the defendants. If plaintiff were so compelled to allege that right, it would seem to follow that it would be compelled to prove it independently of the record of the lower court, but that is procedure unknown in this court in cases and on points heard upon the record brought to this court from the court below. Our statute (Sec. 89-4805) does not describe what a petition in error shall contain, except that it shall set forth the errors complained of. In the case of Board of Commissioners v. Shaffner, 10 Wyo 181, 189, 68 Pac. 14, 17, we stated that "a petition in error should with reasonable certainty describe the cause wherein it is claimed the errors have occurred, and the judgment sought to be reviewed ought to be indicated by some certain description." And the requirements made by this court seem to be the same as made by other courts. It

was said in Lippitt v. Bidwell, 87 Conn. 608, 89 A, 347, 349, involving a writ of error, in which the court held that a writ of error is an independent action, as follows:

"It is enough to allege in the writ of error that in an action brought by (or against) the plaintiff in error to the court whose action is complained of, such proceedings were had as appear by a copy of the record thereof attached to the writ of error, and that the trial court in proceeding to and rendering the judgment therein manifestly erred and mistook the law, and to then assign the errors which are claimed to have been committed, and ask for the reversal of the judgment. This is the brief form given in the practice book, p. 479. It is unnecessary and improper to include in the writ of error allegations of fact *outside the record,* *t*o show that the judgment was erroneous."

So in Fidelity Trust Company v. Traction Company, 270 Mo. 487, 194 S. W. 52, 54 the same requirement was made, the court saying:

"It is the settled doctrine of this court that a writ of error is not, like an appeal, to be considered as a continuation of the original action, but as a new action, which must contain, on its face, the evidence of the right of the plaintiff in error to a review * * * * The writ should show on its face the name or some equivalent description of the one against whom it is directed, and such description as will identify the judgment upon which error is intended to be assigned."

See also City of St. Louis v. Butler, 201 Mo. 396, 99 S. W. 1092; Zumwalt v. Zumwalt, 3 Mo. 269; 3 C. J. 1088. We gather the impression from the decisions that while the petition should indicate the interest of the plaintiff in error in the case, and his right to bring the proceeding, that is sufficiently indicated if

the writ or petition in error shows with sufficient certainty that the plaintiff in error is a party directly connected with the cause below and is interested in a reversal of the judgment rendered therein. The petition in error in the case at bar shows that the plaintiff in error applied in the lower court to have the defendants in error account for, and compel them to inventory, certain assets belonging to the King estate, and that its prayer was denied by a judgment of the trial court We think, accordingly, that its interest in and right to the proceeding in error appears sufficiently.

4. It is contended by counsel for defendants that the trial court, sitting in probate, had no jurisdiction to determine the title to the property in dispute, and that it was right in so holding. It is true that this is the rule in cases in which a third party claims property as against the representative of the estate. 24 C. J. 942. But, due mainly to the necessities of the case, the rule is, by the weight of authority, otherwise when the representative himself claims such property. Stevens v. Superior Court, 155 Cal. 148, 99 Pac. 512, 514; Estate of Fulton, 188 Cal. 489, 205 Pac. 681; Bauer v. Bauer, 201 Cal. 267, 256 Pac. 820; Estate v. Kelpsch, 203 Cal. 613, 265 Pac. 214, 215; Estate of Roach, 208 Cal. 394, 281 Pac. 607; Linthicum v. Polk, 93 Md. 84, 48 Atl. 842, 844; In Re Martin's Estate, 82 Wash. 226, 144 Pac. 42; In re Parker's Estate, 189 Iowa 1131, 179 N. W. 525; Matter of Watson, 215 N. Y. 209, 109 N. E. 86. Courts, at times not finding a definite statute on the subject, have not altogether agreed on what provisions of the law to base the power of the court in proceeding against an administrator or executor. In Illinois that power is based on a statute (Section 81, c. 3, Starr & Curtiss Ann. Ill. St. 1896) almost identical with our section 88-2402, Rev. St. 1931, providing that if an executor or ad-

ministrator or other person interested in an estate complains in writing that some one has concealed, etc., property of an estate, the latter may be cited into court to appear. Platt v. Williams, 175 Ill. App. 1; Day v. Bullen, 226 Ill. 72, 80; Gulow v. Fillwock, 205 Ill. App. 366. That appears to be true also in Missouri. Tygard v. Falor, Executor, 163 Mo. 234, 63 S. W. 672.

The question under consideration was discussed at length in the case of Stevens v. Superior court, supra. It arose in connection with the settlement of a final account. The court of appeals thought that the court had jurisdiction under section 1626 of the Code of Civil Procedure, (Cal.) identical with section 88-2704, Rev. St. Wyoming 1931, reading as follows:

"When an exhibit is rendered by an executor or administrator, any person interested may appear, and by objections in writing, contest any account or statement therein contained. The court or judge may examine the executor or administrator, and if he has been guilty of neglect, or has wasted, embezzled or mismanaged the estate, his letters must be revoked."

But the court added:

"The law knows no wrong without a remedy, and even if the courts were unable to sustain a proceeding of the nature of the one here upon the authority of the language of section 1626 of the Code of Civil Procedure, they would undoubtedly recognize and uphold any reasonable proceeding in which the rights of the conflicting claimants of title might be adjudicated upon issues properly framed for that purpose where opportunity was afforded for a full and fair trial of such issues."

The supreme court, in discussing the question, added:

"He (plaintiff for a writ of prohibition) fails, how-

ever, to point out what other remedy is available to those interested in the estate where the so-called stranger is himself the executor or administrator holding possession of money or other personal property in fact belonging to the estate, but claimed by him in his individual capacity adversely to the estate. There is no statutory authority for the maintenance of an independent action by them against him for the recovery of the property, he cannot be compelled to commence, nor could he maintain an action against himself therefor, and the fact that he claims to be the owner of property which they claim belongs to the estate is no ground for his removal from the office of executor or administrator. * * * * It seems clear to us that the probate court must necessarily have the power to incidentally try and determine such an issue between the executor or administrator and the estate in the matter of the settlement of his exhibits or accounts."

The question under consideration was also discussed at length in the case of Linthicum v. Polk, supra. The court in that case cites a section of the statute requiring the executor or administrator to correct and add to the inventory filed in the Orphans court—the court handling probate matters, as the Probate Court does in this state. The Court of Appeals of Maryland then proceeds to show why the Orphans Court should have jurisdiction to determine title to property claimed by an executor or administrator, and (though we need not approve of everything therein stated) logically reasons as follows:

"The Orphans' Court is the one where the inventory and list of debts are to be filed, and if the administrator does not file correct inventories or lists of debts, can there be any reason why the Orphans' Court should not have authority to compel him to do so? Is that court to be shorn of all power to compel administrators to file true and correct inventories and lists of debts on the mere allegation of the adminis-

trator that the property belonged to him? If the Orphans' Court cannot determine the question, what tribunal can? The title to property of the decedent is in the administrator. No one could maintain an action of replevin, trover, or other action to test the title against him for the estate, for the simple reason that the title is in him as administrator, if the property belongs to the estate. If he has money belonging to the estate who could sue to recover it in a Court of law? Manifestly no one could, for the reason that no one but the administrator is entitled to recover the money due his decedent. * * * It would indeed be scant justice if distributees, with a, petition of this character, are to be turned out of Court on the mere allegation of an administrator that the property referred to belonged to him, and not to the estate he represents. The law does not prohibit those interested in estates from going into the Courts where they are to be settled, to demand proper accounting by administrators and executors."

Counsel for the plaintiff contend, however, that though the probate court had jurisdiction herein, the title to the property involved could not properly be determined except in connection with the settlement of an intermediate or final account.

If we concede, however, as we think we must, that the probate court has jurisdiction to determine the title to property claimed by an executor or administrator, then the time of that determination would seem to be, not a matter of jurisdiction, but at most one of expediency. We are cited to 2 Woerner, Amer. Law of Adm. (3rd Ed.) 1007, where it is said that "the (probate) court has no power, therefore, to compel the administrator to inventory property not clearly belonging to the estate, and this even when claimed as his own." The statement is equivocal, implying that if it clearly appears that property belongs to an estate, the court may order it to be inventoried. But in section 512 of the same work it is said that the pro-

bate court "has not jurisdiction to compel the administrator to inventory property personally claimed by him as his own." The author refers to several cases, none of which seem to go as far as claimed. In Snodgrass v. Andrews, 30 Miss. 472, 64 Am. Dec. 169, it was merely held that the probate court has no power to compel an administrator to return property in his inventory, adversely claimed by a third person. The case is, accordingly, not in point. Nor are the other cases cited. The farthest that any of them go is to the effect that the probate court lacks power to finally determine the title to property. And the cases of Simms v. Guess, 52 Ill. App. 543; Belt's Estate, 29 Wash. 535, 70 Pac. 74, 92 A. S. R. 916 and Hartwig v. Flynn, 79 Kans. 595, 100 Pac. 642, 644, hold that the court may compel the correction of an inventory, giving the executor or administrator, however, the right to protect himself in making it, and further holding that the decision of the court directing the representative to make the correction is not final. The Washington and Illinois cases have been modified by later decisions in these states, as will hereafter be noted. Nor is the case of In Re Haas' estate, 97 Cal. 232, 31 Pac. 893, 32 Pac. 327, in point, for that case, in effect, involved the title of a third person, a minor. The Kansas case just cited states among other things:

"Other cases might be cited to the effect that the probate court in a like proceeding (to correct an inventory) has jurisdiction incidentally to determine the title to property apparently belonging to the estate but to which the administrator or some third party makes claim; but such determination is merely for the purpose of facilitating the orderly progress of business in that court, and does not determine the ultimate rights of the parties. Such rights must be determined in a court of competent jurisdiction."

Whatever may be thought of this reasoning, these cases in any event do not deny, but concede, the power of the court to correct the inventory at any time. The New York practice seems to be to the contrary, and an inventory cannot be corrected when the executor denies that there are any further assets, but the matter must be adjusted in connection with the final account. The reason given is that "the inventory is required to be under oath; the court cannot order assets to be inserted in the inventory without the parties' oath, nor can it compel an executor or administrator to swear to assets, the possession of which he has twice already denied, viz., once in the inventory, and again in the answer denying the allegations." Thompson v. Thompson, 1 Bradf. Sur. 24; Montgomery v. Dunning, 2 Bradf. Sur. 220; In Re McIntyre, 4 Redf. Sur. 489; In Re Arbogast's Estate, 9 Civ. Proc. R. 231, 232; Matter of Goundry, 57 App. Div. 232, 68 N. Y. S. 155. The reason has not appealed to other courts, in which it is held that an inventory may be compelled to be corrected. See in addition to the cases already cited 23 C. J. 1165; Bancroft's Probate Practice, Sec. 518; In Re Ralston, 3 N. S. 195; Emerich v. Hileman, 71 Ill. App. 512; Melizet's Appeal, 17 Pa. St. 449, 55 Am. Dec. 573 (under a statute similar to ours); Barka v. Hopewell, 29 N. M. 166, 219 Pac. 799; Pennington v. Newman, 36 Okl. 594, 129 Pac. 693; Linthicum v. Polk, supra; Tygard v. Falor, supra; In Re Glenn, 23 Ohio Cir. Ct. R. 397; Fowler v. Brady, 110 Md. 204, 73 Atl. 15, 17; In Re Martin's Estate, 82 Wash, 226, 144 Pac. 42. The last cited case involved a proceeding similar to that in the case at bar, and in holding it to be maintainable gave as a cogent reason the following:

"Moreover, it is not only the policy of the statute, but to the interest of heirs, legatees and creditors of

an estate, that the property belonging thereto be brought at once within the jurisdiction of the court, as the person having it in possession must give bond for its safe-keeping, thus lessening the possibility of its loss to the persons to whom it will ultimately come."

In the case of Fowler v. Brady, the court said:

"Sec. 215 of Artl. 93, provides that 'whenever personal property of any kind, or assets not mentioned in an inventory already made, shall come to the possession or knowledge of an administrator or collector, an account or inventory of the same shall be returned * * * * within two calendar months from the time of discovery.' By Sec. 259 of the same article, the Orphans' Court is given ample power to compel an administrator to 'fulfill his duty on pain of revocation of letters.' If the property mentioned in the petition of the appellant as not having been included in the inventory of the administrator is the property of the deceased, it is the duty of the administrator to make a return of it to the Orphans' Court, and upon his failure or refusal to do so after notice, the appellant (a creditor) may file a petition against him in the Orphans' Court to require him to do so. And upon proper application * * * that court * * * ought * * * to require the property mentioned * * * to be included in the inventory returned by the administrator."

The statutes of Maryland are not more emphatic than the statutes of this state.

An inventory is at least in the nature of an exhibit or account. The probate court is under our statute vested with exclusive power in all matters touching the settlement and distribution of estates. Sec. 88-201. An executor and administrator is required to file an inventory of the property of the estate and is compelled to subscribe an oath that it contains a true statement of all the estate of the decedent and "of all just claims of the decedent against the

affiant." Sections 88-2301 and 2306. Section 88-2308 provides for the correction of an inventory, reading as follows:

"Whenever property not mentioned in any inventory that is made and filed comes to the possession or knowledge of an executor or administrator, he must cause the same to be appraised in the manner prescribed in this article, and an inventory thereof to be returned within two months after the discovery; and the making of such inventory may be enforced, after notice, by attachment or removal from office."

The proceeding in the case at bar is substantially one to correct the inventory filed in the case, or in the nature thereof, and the statute specifically provides that such correction may be enforced. It may be done, it states, by "attachment or removal from office." But after all the determination of the rights of the parties and of the truth of the situation would seem to be but incidental thereto. It is said in Phelan v. Smith, 100 Cal. 158, 34 Pac. 667, that the court has power, apparently, upon its own motion to require a second inventory. If so, it has power to do so when an interested party requests it.

We think, accordingly, that the probate court has power to order the correction of an inventory, and this is a proceeding to have that done. Hence it is, strictly, not necessary herein to determine whether the judgment rendered by the court should be final or not, though we think that when a full hearing has been had, it ought to be final as to the party litigants. It appears to have been considered as final as to such parties in Linthicum v. Polk, supra; Tygard v. Falor, supra; Martin v. Martin, 170 Ill. 18, 48 N. E. 694; Coffey v. Coffey, 179 Ill. 283, 285; 53 N. E. 590; In Re Glenn, 23 Ohio Cir. Ct. 397. The point was directly raised in Platt v. Williams, 175 Ill. App.

1, and the court decided that such adjudication would be final. That, too, is the effect of In Re Martin's Estate, supra, in which it was further decided that the judgment rendered in such case is appealable. The court cannot, of course, affect the rights of those not before it. But it can hardly be contended that parties other than the plaintiff and the defendants were necessary parties, particularly in view of the fact that the court may have the inventory corrected on its own motion. It was held in the case of Hickman v. Flenniken, 12 La. Ann. 268, that any one heir may compel the administrator to render his account without the concurrence of his co-heirs, and without making his coheirs parties to the suit. The same rule, we think, is applicable in the case at bar. And while other interested parties doubtless were proper parties, the defendant chose to go to trial without attempting to bring them into court, or having them brought in, and hence must be held to have waived their presence. Kirch v. Nicholson, 42 Wyo. 489, 297 Pac. 398.

It is no doubt true that frequently the most satisfactory time to settle issues such as raised in the case at bar is at the time of the final accounting, when all the parties are, under our statute, before the court, and the court, doubtless, may at times defer the hearing to that time, if the objections to the inventory are not raised until close to the time when the final account will be rendered, or when it appears that no prejudice will result to the estate by delay, and the executor or administrator has or will give a sufficient bond. But as indicated in the case of In Re Martin's Estate, such delay might at times result in damage to the estate, and we can well conceive of a situation, as when the property of the estate is necessary to be sold to satisfy the claims of creditors, that the title should be adjudicated promptly and finally, whether

the executor or administrator desires that or not, so that the property may be sold to the best advantage to the estate. And if in any case an executor or administrator claiming the title to such property, desires other parties to be joined in the proceeding, he should bring them in by proper process, within the time fixed by the court.

5. Many of the arguments in the briefs of counsel for both sides are devoted to a discussion of what the evidence shows. The trial court, as already stated, refused to determine the issues raised by the pleadings, and counsel for the plaintiff ask that we do so upon the record before us, and believe that we have the authority to do so in view of the provisions of section 88-4819, which empowers this court "to render such judgment as the court below should have rendered" or remand the cause for judgment to the lower court. But this court is not constituted, primarily, for the determination of disputed questions of fact. The evidence in this case shows a conflict, though we shall not indicate the extent thereof, and without deciding whether this court has the power mentioned, we think that we ought not to render a final judgment here. See 4 C. J. 1187-1188.

The judgment of the trial court is, accordingly, reversed, and the cause remanded to the district court with direction to proceed to determine the issues herein, and for such further proceedings as may be proper, not inconsistent with this opinion.

*Reversed and Remanded.*

KIMBALL, Ch. J., and RINER, J., concur.